# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | |
|---|---|
| **KRISTI SOMMER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Cause No.: 3:08-CV-522** |
| | ) |
| **CITY OF ELKHART,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

This matter is before the court on the motion for summary judgment filed by the

defendant, City of Elkhart ("the City") on September 15, 2009. Docket at 18. The plaintiff,

Kristi Sommer ("Sommer") filed a response in opposition to the motion on October 19, 2009.

Docket at 21. The City then filed a reply brief on November 3, 2009 ("Defendant's Reply").[1] For

the reasons discussed herein, the motion for summary judgment is DENIED.

## FACTUAL SUMMARY

Sommer filed this lawsuit on November 14, 2008, alleging that the City discriminated

against her based on her sex in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e, *et seq.* Complaint, docket at 1, p. 1. Sommer states that she is an

employee of the City's Fire Department, where she has worked since July 1, 1996. *Id.*, p. 2. She

---

[1] As required by Fed.R.Civ.P. 56 and Local Rule 56.1, the City also filed a memorandum in support of its motion ("Defendant's Memorandum"), docket at 19, and a statement of material facts ("Defendant's Statement of Material Fact"), docket at 20. Along with her response brief ("Plaintiff's Response"), Sommer submitted her Designation of Evidence in support of her opposition to the motion. Docket at 22. The City also filed what it titled "Defendant's Response to Plaintiff's Statement of Additional Material Facts Defendant's Additional Material Facts," [sic] on November 3, 2009. Docket at 24. In this filing, the City responds to certain facts presented by Sommer and adds what the City characterizes as additional "material facts." The court has read and considered all of these pleadings.

contends that she has always met or exceeded the Department's expectations for her performance. *Id.* According to Sommer, "[o]n April 24, 2007, Fire Chief Richard Snell made a recommendation to [the City's] Board of Safety that Brian Bemiller be promoted to the position of Assistance Battalion Chief" even though, according to Sommer, "Mr. Bemiller did not possess all of the requisite qualifications for the position . . ." *Id.* Sommer maintains that she met all of the requisite qualifications for the position but that Chief Snell did not recommend her for the promotion. *Id.* Also, Sommer claims that the Fire Department (i.e., the City) did not follow its own Standard Operational Procedures ("SOPs") with respect to filling the position of Assistance Battalion Chief. *Id.*, pp. 2-3. Sommer also states that "[o]n May 22, 2007, Chief Snell made a recommendation to Defendant's Board of Safety that Chad Carey be promoted to the position of Captain F6. *Id.*, p. 3. Sommer claims that Carey was also unqualified for this position, that the Department once again failed to follow its Standard Operational Procedures when filling the position, and that she was denied an opportunity to apply for the position even though she had the requisite qualifications. *Id.* Sommer contends that she was denied promotion because she is female and she asks for an award of damages as a result. *Id.*, p. 4. She also asks the court (or jury, as the case may be) to "[o]rder Defendant to instate [her] to the position of Assistant Battalion Chief or Captain F6 or to pay Sommer front pay in lieu thereof[.]" *Id.*

The City states that during the course of her employment, Sommer has "moved through the ranks to firefighter second class or first class and she was never denied moving up to these next levels." Defendant's Statements of Material Fact, p. 1. The City states that Sommer "was promoted to Suppression Lieutenant in March of 2006, which is Plaintiff's current rank." *Id.*, p. 2. However, the City argues that Sommer "has never applied for a captain's position, or the

testing for the position, because she does not believe she was qualified at the time the position was available." *Id*., p. 3. According to the City, Sommer "was not considered for promotion to Captain because she did not apply for or complete the Captain's test." *Id*. As for the position of Assistant Battalion Chief, the City contends that Sommer "did not notify the Fire Department administration, either verbally or in writing, of her desire to be considered for the . . . position." *Id*., p. 5. Sommer would not have been considered for the position of Assistant Battalion Chief in any event, states the City, because "the Fire Chief at the time did not feel that Plaintiff had sufficiently extensive fire ground experience, felt that Plaintiff made poor decisions involving her crew and their safety and therefore was not capable of taking on decisionmaking responsibilities for 36 firefighters, that Plaintiff did not exhibit the necessary temperament of the position, and that she exhibited poor leadership and management skills." *Id*., p. 6. The City also points out that it "has promoted female firefighters" to various officer ranks, including one female employee who was promoted to a rank higher than the positions that Sommer complains she was denied an opportunity to apply for. *Id*., p. 7. In short, the City argues that Sommer never applied for the positions she says she was denied and was not qualified for those positions in any event. Thus, the City argues that any adverse employment actions Sommer arguably suffered during her employment had nothing to do with her gender and, therefore, the City is entitled to summary judgment in its favor on Sommer's Title VII sex discrimination claim. Defendant's Memorandum, docket at 19, generally. Additional facts will be discussed below as they become pertinent to the court's discussion and analysis.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322; *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). A failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325. A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available. *Seener v. Northcentral Technical Coll.,* 113 F.3d 750, 757 (7th Cir. 1997); *Wohl v. Spectrum Mfg., Inc.,* 94 F.3d 353, 354 (7th Cir. 1996). To that end, the court carefully reviews affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination. However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir. 1997).

## DISCUSSION

In order to succeed on a claim of sex discrimination under Title VII based on a failure to promote, a plaintiff such as Sommer may present direct evidence of discrimination (or sufficiently damning circumstantial evidence), or may utilize the familiar "burden-shifting" method. As to the first approach, the Seventh Circuit has explained as follows:

> In order to make out a case of sex discrimination without resorting to *McDonnell Douglas,* a plaintiff must provide either direct or circumstantial evidence that supports an inference of intentional discrimination. *E.g., Petts v. Rockledge Furniture, LLC,* 534 F.3d 715, 720 (7th Cir. 2008). [Plaintiff] lacks any sort of direct admission of discriminatory intent, but she maintains that "a convincing mosaic of circumstantial evidence," *Phelan v. Cook County,* 463 F.3d 773, 779 (7th Cir. 2006) (quoting *Rhodes v. Ill. Dep't of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004)), exists from which a juror could conclude that she was discriminated against on account of her sex and height. Ordinarily circumstantial evidence consists of certain indicators that sex may be the real motivating force for employment decisions. As relevant here, we have in the past recognized two general categories of circumstantial evidence: (1) ambiguous statements or behavior toward other employees in the protected group that taken together allow an inference of discriminatory intent and (2) evidence of systemically better treatment of employees outside the protected class. *E.g., Petts,* 534 F.3d at 721.

*Coffman v. Indianapolis Fire Dept.*, 578 F.3d 559 (7th Cir. 2009). If, however, a plaintiff chooses or is forced to proceed under the burden-shifting method, the analytical approach is as follows:

> [Plaintiff] proceeds on the indirect, burden-shifting method set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, a plaintiff successfully establishes a prima facie case of discrimination by the indirect method if she shows that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she was rejected for the position; and (4) the position was given to someone outside the protected class who was similarly or less qualified than she. *Jackson v. City of Chicago,* 552 F.3d 619, 622 (7th Cir. 2009). The presumption of discrimination created by establishing a prima facie case shifts the burden to the defendant "to produce a legitimate, noninvidious reason for its actions." *Atanus v. Perry,* 520 F.3d 662, 672 (7th Cir. 2008). If the defendant rebuts the prima facie case, the burden then shifts back to the plaintiff to show that the reasons proffered by the defendant are merely pretextual. *Id.*

*Hobbs v. City of Chicago*, 573 F.3d 454, 460 (7th Cir. 2009). The court went on to explain the concept of pretext:

> Our recent Title VII cases explain that a plaintiff demonstrates pretext by showing the employer's proffered nondiscriminatory reason is a lie and the real reason is based on

discriminatory intent. *See, e.g., Fischer,* 519 F.3d at 403; *Brown v. Ill. Dep't of Natural Res.,* 499 F.3d 675, 683 (7th Cir. 2007); *Keri v. Bd. of Trs. of Purdue Univ.,* 458 F.3d 620, 646 (7th Cir. 2006) ("In a word, the Plaintiff must establish that ... [the employer's] reasons ... were merely made up to cover up ... discriminatory reasons.").

*Id.* at 462. "The precise question then is not whether the employer's justification for the adverse action is a pretext, but whether it is 'a pretext for the sort of discrimination prohibited by [Title VII].' *McDonnell Douglas Corp.,* 411 U.S. at 804, 93 S.Ct. 1817; *see Reeves,* 530 U.S. at 147, 120 S.Ct. 2097 ("[I]t is not enough ... to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)) (emphasis in original))." *Greene v. Potter*, 557 F.3d 765, 769 (7th Cir. 2009).

In the present case, the City argues that Sommer cannot meet her burden under either theory. The City claims that since Sommer did not meet the qualifications for either the Assistance Battalion Chief position or the Captain's position, she cannot be heard to complain of gender discrimination. Furthermore, the City contends that since Sommer never applied for either position, her claim fails for that reason also. In other words, she cannot make out a *prima facie* case of discrimination because she has no direct evidence of it (or a "convincing mosaic of circumstantial evidence"), nor can she succeed in establishing any of the prongs of such a claim under the burden-shifting method with the exception of the first one. If it is true that Sommer was unqualified and that she failed to even apply for the positions she claims she was denied, then her claim fails. Of course, she maintains that the situation is not so clear cut.

The City states in its brief that Sommer "has failed to provide any direct evidence of discrimination, such as an admission by a decisionmaker or a 'convincing mosaic of circumstantial evidence' that points to a discriminatory reason for Defendant's failure to promote

Plaintiff . . . ."  Defendant's Memorandum, p. 4.  According to the City, Sommer "neither

applied for, nor was she qualified for, the positions about which she complains–two essential

prongs for the Plaintiff's burden of establishing a prima facie case of discrimination."  *Id.*, p. 5.

The City contends that "it undisputed that Plaintiff did not apply for either the Captain or

Assistant Battalion Chief position.  Without meeting this prong, Plaintiff's prima facie claim

fails. . . . Plaintiff has not argued, and presents no facts to show, that she was denied the right to

apply for, or deterred from applying for, the positions at issue due to discriminatory motives.

She presents no evidence that she did not apply for the positions because of sex discrimination."

*Id.*  The City also argues that Sommer simply did not meet the qualifications required for the

positions.  For all these reasons, the positions were filled with two male firefighters whom the

City insists met the qualifications for the jobs.

At the time these positions were open, the Fire Department had certain specific

requirements for the positions.  For the Captain's position, "the requirements . . . were at least 7

years of service with the Fire Department, hold a minimum rank of lieutenant for at least 2 years,

certification of NFPA Fire Officer I, hold or obtain NFPA Fire Officer II certification within one

year of appointment, hold or obtain instructor I certification within one year of appointment,

certification of EMT or greater, and possession of a valid, unconditional Indiana Motor Vehicle

Operator's license."  Defendant's Statements of Material Fact, docket at 20, p. 3.  For the

Assistant Battalion Chief position, the requirements included "at least 10 years of service at the

Fire Department; hold the minimum rank of lieutenant for at least 2 years; possession of one of

the following: Indiana NFPA Fire Officer I certification, Master Fire Fighter Tactics certification

or Master Fire Fighter-Management certification; hold or obtain Indiana NFPA Fire Officer II

certification within one year of appointment to the position; hold or obtain Instructor II/III certification within one year of appointment to the position; certification as an EMT or greater and possession of a valid Indiana Motor Vehicle Operator's license." *Id*., p. 5.[2]

Brian Bemiller was promoted to the Assistant Battalion Chief position and Chad Carey was promoted to the Captain position. According to the City, "Bemiller held all of the minimum requirements for the position–he had been a member of the Fire Department for nearly 15 years, had been a lieutenant for nearly 7 years, held Master Fire Fighter Tactics certification and Master Fire Fighter Management certification, was certified as an EMT and held a valid Indiana Motor Vehicle Operator's license." Defendant's Memorandum, pp. 6-7. In addition, according to the City, "Bemiller had been with the department for five more years than Plaintiff. . . . Plaintiff did not have the fire ground experience, management skills or temperament to be an Assistant Battalion Chief, versus Mr. Bemiller who Defendant believed had demonstrated good leadership and decision-making skills and was well-respected by his fellow firefighters. Plaintiff has simply failed to show that Mr. Bemiller was not more qualified than her for the position." *Id*., p. 7. As for Carey, he "had been a member of the Fire Department for eight years and . . . had held the rank of lieutenant for two years and seven months. The City states that Sommer "had not held the rank of lieutenant for two years at the time, and thus cannot show that . . . Mr. Carey was not more qualified than Plaintiff." *Id*., p. 7. It is undisputed that Sommer had not held the rank of lieutenant for a period of two years at the time the Captain's position and the Assistant Battalion Chief position became available.

---

[2] The requirements for the Captain's position and the Assistant Battalion Chief position are enumerated in the City of Elkhart Fire Department's Standard Operational Procedures, which is included as Exhibit 3 to Plaintiff's Designation of Evidence, docket at 22.

In addition, the City also points out that Sommer had been disciplined on three occasions. She was disciplined for "failing to fill the fuel tank and running out of gas, failing to relieve an incapacitated driver and report the incident properly, and a failure to prepare require preplans of buildings. Thus, Plaintiff cannot meet the crucial prong of the test that Carey and Bemiller were not better qualified than the Plaintiff for the positions at issue." *Id*.

The City also counters Sommer's allegations of sex discrimination by pointing out that "Plaintiff . . . was promoted through the ranks of the Fire Department from firefighter third class to her current position of suppression lieutenant–a total of six promotions in ten years with the Fire Department." *Id*., p. 10. The City also points out that when Sommer was promoted to her current position of suppression lieutenant, she was promoted over a male applicant because Sommer had scored higher on a test for the position than did the male firefighter. *Id*. Finally, the City notes that "the Elkhart Fire Department has promoted female firefighters four times between 2002 and 2006, and some of those promotions were to positions higher than the positions held by Sommer or even Carey. *Id*., pp. 10-11. The City argues that these facts establish that there was no discriminatory intent or motive involved in the promotion process within the Fire Department.

According to the City, Sommer "did not notify the Fire Department administration, either verbally or in writing, of her desire to be considered for the Assistant Battalion Chief position." Defendant's Statements of Material Facts, p. 4. In addition, the City states that Sommer "never submitted a resume or any kind of letter expressing and interest in the Captain's position because she did not feel that she met the prerequisites." *Id*. The City points out that in her deposition, Sommer admitted that she did not apply to take the initial test for the Captain's position because

she did not believe she met all of the prerequisites.  *Id.*, Exhibit 1, Deposition of Kristi Sommer, pp. 50-52.

For all of these reasons–her failure to meet the minimum requirements for the positions, her failure to even apply for them, her disciplinary record, her own promotions in the past, and the promotions of other female firefighters in recent years–Sommer cannot meet her burden of establishing a *prima facie* case of discrimination or presenting evidence of intentional illegal motive on the part of the City, and the City argues that it is entitled to judgment in its favor on Sommer's sex discrimination claim.

For her part, Sommer maintains that "she was told she was ineligible for the Captain position because she did not meet the qualifications for the position, but Defendant then promoted a male who did not meet the qualifications into that position.  Sommer was then excluded from consideration for the Assistant Battalion Chief position in favor of at least three male applicants, including the less qualified one who received the promotion."  Plaintiff's Response, docket at 21, p. 2.  Sommer also claims that her failure to apply for either position was the result of her belief that she did not meet all the prerequisites as they were stated in the Fire Department's SOPs.  However, she argues that the Department did not follow its own SOP when it filled the two positions, and so her failure to pursue the positions should not defeat her claim. *Id.*, pp. 2-3.  As for the Captain's position, for example, Sommer states that she "did not apply for the Captain position and/or the testing for the Captain position because she did not meet the prerequisites for the position. . . . Sommer then confirmed her ineligibility for the Captain position by speaking with two of Defendant's Chiefs who confirmed that she was ineligible for the Captain position . . . ."  *Id.*, p. 3.  Assuming that she was not eligible to even take the initial

test for the Captain's position, Sommer took no action to pursue the job. Nonetheless, Sommer

argues that, as it turned out, she was as qualified or even more qualified than either Bemiller or

Carey. Sommer states it this way:

> Sommer must start off by acknowledging that she, in fact, did not satisfy each and
> every requirement for the Captain and Assistant Battalion Chief positions. . . .
> Then again, neither did the two males who were awarded the positions. . . . Here,
> it would be patently unfair to require Sommer to establish that she met each and
> every listed requirement for the open positions while the male firefighters who
> received the promotions were not subjected to the same requirement. Because
> Sommer can establish that she was at least as qualified as Mr. Cary and Mr.
> Bemiller, who according to the standards utilized by Defendant were qualified for
> the positions, she can meet this element of her *prima facie* case.

*Id.*, p. 11.

As to the Captain's position, Sommer states that she "had at least 7 years of service on

the department, was Indiana Certified as a NFPA Fire Officer I, was an Instructor I, was certified

as an EMT or greater, and possessed a valid, unconditional, Indiana Motor Vehicle Operator's

license. Sommer was not Indiana Certified as a NFPA Fire Officer II, but the SOP allowed her

one year to obtain this certification post-promotion. . . . Additionally, Sommer had not served as

a Suppression Lieutenant for at least two years." *Id.* However, Sommer then points out that

"Mr. Carey, the individual who was awarded the Captain position, also did not meet all of the

requirements. Mr. Carey was not Indiana Certified as a NFPA Fire Officer I." *Id.*, pp. 11-12.

Other than that certification, Carey's qualifications matched those of Sommer–a point she

concedes in her brief. *Id.*

With regard to the Assistant Battalion Chief position, Sommer states that "the only

requirement [she] did not meet was to hold the minimum rank of Suppression Lieutenant for at

least two years." *Id.*, p. 12. She also states that "Mr. Bemiller . . . did not meet two of the

12

requirements. Mr. Bemiller was not Indiana Certified as a NFPA Fire Officer I, nor did he possess an Instructor II/III Certification." *Id.* Therefore, Sommer maintains that she was as qualified or more qualified than the two males who received the promotions.

As for her failure to apply to either position or to sign up for the initial testing required to pursue either position, Sommer argues that her failure to do so was the result of discriminatory practices on the part of the City that deterred her from doing so. Sommer points out that "when a discriminatory practice deters an individual from seeking a position, an inference of discrimination is raised." *Id.*, p. 13 (citing *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 523-24 (7th Cir. 1994)). As stated above, Sommer argues that she did not sign up for the testing for the Captain's position because she believed she did not meet the prerequisites and that she even confirmed her ineligibility with two Fire Chiefs. *Id.* She states that she did not apply for the Assistant Battalion Chief position "because she never even knew the position was available. . . . The record is devoid of any evidence demonstrating that Defendant advertised this position via a job posting or other internal mechanism and Sommer testified that there was never a posting for the testing required by the SOP." *Id.*, p. 14. Sommer contends that the City's accusation that she never notified anyone, "verbally or in writing," about her interest in the position is a disingenuous argument. According to Sommer, "how was Sommer to know about the position and her need to express an interest therein? Defendant never answers this question." *Id.*[3]

Sommer, therefore, argues that she successfully establishes her prima facie case.

_____

[3] The City states that it denies that Sommer "was never given an opportunity to apply for the Assistant Battalion Chief position awarded to Mr. Bemiller but admit[s] that there was no posting for the position." Defendant's Response to Plaintiff's Statement of Additional Material Facts, docket at 24, p. 3.

According to her, the evidence establishes that she was interested in the positions (but deterred from applying for them due to the City's failure to follow its own standard procedures when filling the jobs), she was qualified for the positions, and the positions were given to similarly or less-qualified individuals not in the protected class.

Sommer also argues that she has presented sufficient evidence to raise a fact issue with regard to pretext. Sommer states as follows:

> Here, Sommer is able to set forth ample evidence of pretext. For example, the record is replete with evidence demonstrating that Defendant did not follow its own SOPs and past practices with respect to both the Captain and Assistant Battalion Chief promotions. Defendant undeniably hired two males who did not meet the prerequisites for the positions as stated in the SOPs. . . . Additionally, Defendant's practice was that a firefighter who did not meet the prerequisites for a position was not even allowed to test for the position. However, Mr. Carey was awarded the position despite not meeting the prerequisites. Such failures to follow internal policies may constitute evidence of pretext. . . . Also, despite telling Sommer she was ineligible for the Captain position because she did not meet the prerequisites, Defendant hired Mr. Carey, a male who did not meet the prerequisites, for that very same position.

*Id*., pp. 16-17 (citations omitted). As further evidence of pretext, Sommer recounts that she attended a meeting on June 19, 2008, in which the promotional process within the Fire Department was being discussed. *Id*., p. 18. Sommer states that when she walked into the meeting, "the words 'testing vs. the good ol' boy system' had been written on a white board. . . . Sommer recalls one of Defendant's Chiefs asking, 'Do we want a testing system or do we want the good ol' boy system?' during the meeting. . . . Sommer also recalls that one of the Chiefs confessed that Defendant had not followed the promotional process correctly in the past and that one of the Chiefs stated that he wanted Defendant to go back to the good ol' boys system where Defendant could promote whomever it wanted to without abiding by the promotional process. . . . These statements at the highest levels of Defendant, which must be taken as true for purposes of

the present motion, evidence a disturbing and discriminatorily anti-female mindset within

Defendant.  Additionally, the admission that Defendant had not properly followed the

promotional process in the past could very well be a reference to one or both of the incidents at

issue in this case, each of which having occurred approximately one year prior to the June 19,

2008 meeting." *Id.*, pp. 18-19.  Sommer never identifies the Chief who allegedly made this

admission.

   The City takes issue with most of Sommer's contentions.  In its reply brief, the City first

responds to Sommer's recitation concerning the June 2008 meeting and states that this is nothing

more than Sommer's "own self-serving testimony about possible use of the term 'good ol' boy

system' in a meeting . . . ."  Defendant's Reply, docket at 23, p. 1.  The City also takes the

position that even though two of the City's Fire Chiefs told Sommer that she was not qualified

for the Captain's position, "she has not shown that she was deterred from applying because of

discriminatory practices."  *Id.*, p. 2.  The City states that Sommer "does not even go so far as to

establish that the 'chiefs' told her that she could not apply for the positions, only that she was not

qualified for them."  *Id.*  This is a curious argument.  Examined in a light most favorable to

Sommer, the court can certainly understand that an employee who is told that she is not qualified

for a particular position could reasonably interpret that as an indication that applying for those

positions would be futile.  It may be true, as the City states, that no Fire Chief ever explicitly told

Sommer she should not, or could not, apply for the position of Captain.  But telling her that she

is not qualified for that position amounts to essentially the same thing.  Thus, Sommer's

explanation for why she did not apply for the Captain's position is not unreasonable.  As for the

Assistant Battalion Chief position, the City concedes that it was not posted (although it offers no

explanation as to why), so Sommer's failure to apply for that position is likewise understandable. In other words, Sommer did not simply ignore the positions and her failure to apply for them was not the result of her own neglect. At the very least, this issue is material and could only be resolved by the presentation of additional evidence–especially testimony–in the course of a trial. The court concludes that Sommer has presented sufficient evidence that her failure to apply for the positions of Captain and Assistant Battalion Chief may very well have been the result of factors beyond her control. Accordingly, this alleged failure on her part does not provide the City with a valid basis on which to seek summary judgment on Sommer's claim.

The crux of Sommer's claim of sex discrimination rests with her contention that she was equally qualified, or even more qualified, than Carey and Bemiller. The City takes issue with this position. The City points out that the requirements Sommer lists for the Captain's position and the Assistant Battalion Chief position are "only the 'special requirements' portion of the qualifications for each position. [The] SOP . . . also sets forth 'Essential Knowledge, Skills and Abilities' as additional qualifications for each position, which Plaintiff ignores in discussing whether she was equally qualified as the male firefighters for the positions." Defendant's Reply, p. 3. In fact, the SOP document does enumerate several additional qualifications for each position, which the City lists in its reply brief. *Id*., pp. 3-4. *See also*, Plaintiff's Statement of Genuine Issues, Exhibit 3. For both positions, these additional qualifications state in specific terms the knowledge that successful applicants must have, the abilities applicants must have with regard to management ability, and the abilities such applicants must have to "express ideas clearly, concisely, orally and in writing to groups and individuals[.]," and the "ability to maintain discipline among subordinates in the department." *Id*. The City argues–correctly–that Sommer

does not even mention these additional qualifications when she compares her own qualifications to those of Carey and Bemiller. The City presents affidavits from two Fire Department officials explaining that Carey and Bemiller were thought to have demonstrated these additional qualifications and abilities, which is part of the reason they received their promotions. In addition, these officials did not believe that Sommer possessed these qualities to a sufficient degree and so she would not have received either promotion even if she had applied and tested for them. For example, the City presents the affidavit of Richard Snell, who was the Chief of the Elkhart Fire Department at the time the positions of Captain and Assistant Battalion Chief were filled. Defendant's Response to Plaintiff's Statement of Additional Facts, attachment 1. Snell states that he "would not have considered Kristi Sommer for either position, even if she had properly applied and been qualified, due to concerns that I had regarding her decision-making ability, prior incidents of discipline, and her lack of experience in managing a fire scene." Snell Affidavit, ¶ 5. Snell states that "Sommer was disciplined on three occasions after she was promoted to Suppression Lieutenant, including a failure to prepare pre-plans for buildings,[4] failing to relieve an incapacitated driver and properly report same, and failing to fill the fuel tank of her ambulance at ½ full, which resulted in the ambulance subsequently running out of gas." *Id.*, ¶ 6. Snell states that he "did not feel that [Sommer] had the decision-making ability or judgment to move up to the next rank of Captain. Neither Mr. Carey or Mr. Bemiller had any similar incidents of discipline, nor had Mr. Carey or Mr. Bemiller exhibited a similar lack of good judgment." *Id.*, ¶ 7. Snell also addressed the qualifications of Sommer, Carey and

---

[4] "Preplans are drawings of a building so that firefighters know the layout of the building[.]" and are better prepared to battle a fire should one occur at a particular location. Defendant's Statement of Material Facts, p. 8.

Bemiller, and stated as follows:

> As set forth in [the] SOP . . .the duties of both Captain and Assistant Battalion
> Chief positions included the ability to prepare building pre-plans, to express ideas
> clearly to individuals, maintain discipline among subordinates, and to establish
> and maintain effective working relationships with other members of the
> department.  Ms. Sommer had failed to demonstrate the qualities listed above as a
> Suppression Lieutenant, even though the position of Lieutenant required these
> same qualities; thus, Ms. Sommer had not yet shown the necessary supervisory
> skills and abilities for either the Captain or Assistant Battalion Chief positions. . .
> . Ms. Sommer had not previously been in charge of a fire whereas Brian Bemiller
> had assumed the temporary role of Assistant Battalion Chief on several occasions
> prior to his appointment [to that position]; thus, he had the additional expertise in
> firefighting and supervision of a fire scene that Ms. Sommer did not.  I also had
> concerns with Ms. Sommer's temperament and supervisory skills in managing
> other firefighters, in part based on her decision as the officer in charge to allow an
> incapacitated driver to continue driving.

*Id.*, ¶¶ 8-12.  Finally, Snell states that he "considered promoting female firefighter LeNita

Kilgore to the position of Assistant Battalion Chief; however, Ms. Kilgore was instead promoted

to Inspector/Investigator–Arson Bureau, F-9 on 11-18-2006 at her request.  The position of

Inspector/Investigator–Arson Bureau F-9 is a higher rank than Lieutenant, F-5, Captain, F-6 and

Assistant Battalion Chief, F-7."  *Id.*, ¶ 14.[5]

The City also contends that Sommer misrepresents the alleged lack of qualifications of

Carey and Bemiller.  For example, Sommer argues that Bemiller was not qualified for the

position of Assistant Battalion Chief since he did not have NFPA Fire Officer I certification at

the time of his promotion, which was one of the requirements for the job.  However, the City

presents the affidavit of Michial Compton, the current Chief of the Elkhart Fire Department.

Compton states that "The Elkhart Fire Department considers Master Fire Fighter–Strategy and

---

[5] Snell's statement about Ms. Kilgore is obviously intended to refute Sommer's
contention that a "short list" of candidates for the Assistant Battalion Chief contained only the
names of three male firefighters and no women.  *See* Plaintiff's Response, p. 18.

Tactics, and Master Fire Fighter–Fire Service Management certification equivalent to NFPA Fire Officer I certification. Brian Bemiller has both Master Fire Fighter–Strategy and Tactics, and Master Fire Fighter–Fire Service Management, receiving them on February 28, 1996 and March 11, 1996 respectively." *Id.*, ¶¶ 4 and 5. Attached to Compton's affidavit are documents showing that Bemiller had indeed received these professional certifications. Thus, according to the City, Bemiller did, in fact, meet all of the requirements for the Assistant Battalion Chief position, contrary to what Sommer represents. The City argues that Sommer "only compares the pure number of special requirements held by herself, Mr. Carey and Mr. Bemiller, without explaining how the differences are substantial, and ignores the other enumerated qualifications for the positions . . . ." Defendant's Reply, pp. 5-6. The City contends that Sommer "has not shown this Court how she met the additional 'Essential Knowledge, Skills and Abilities' qualifications of either the Captain or Assistant Battalion Chief positions and how she was equally or more qualified than the male firefighters chosen for the positions in these areas. Thus, Plaintiff has not carried her burden of proof that she was as qualified as the male firefighters chosen for the positions and has not established a prima facie case of discrimination." *Id.*, p. 6. The City does not provide any similar explanation with regard to Carey's promotion to Captain. Sommer has presented evidence that she was arguably as qualified as Carey. This evidence remains unrefuted at this point, with the exception of Snell's assertions in his affidavit that he did not consider Sommer to be as qualified as Carey because of her past disciplinary problems and her overall temperament and leadership ability. Snell may be telling the truth, of course, but it is not this court's duty to attempt to ascertain the veracity of such statements on summary judgment. Consequently, Sommer has raised a genuine issue of fact with regard to her qualifications for the

Captain's position and the Assistant Battalion Chief position vis-a-vis those of the male firefighters who ended up getting the jobs. While she did not meet all the listed basic qualifications to the letter (i.e., she had not been lieutenant for two years), she presents fact issues concerning whether Carey and/or Bemiller actually met all the qualifications as precisely as they are written. Examining the situation in a light most favorable to Sommer, it appears that her qualifications, and those of Carey and Bemiller, were remarkably similar. Again, the difference may be Sommer's perceived weaknesses in terms of managerial ability, ground fire experience, and her past disciplinary problems. But credibility determinations must be made to assess the true impact these weaknesses had or may have had if Sommer had been in contention for one or both of the promotions.

The City also argues that Sommer has failed to present any evidence of pretext, even assuming she meets her burden of establishing a *prima facie* case of discrimination. *Id*. The City points out that Sommer bases her pretext argument on the fact that the Fire Department did not follow all of its internal procedures as set forth in its SOPs when it filled the two positions. The City argues that "an employer's failure to follow its own regulations and procedures, alone, may not be sufficient to support the conclusion that its explanation for the challenged employment action is pretextual." *Id*. (citing *Fischbach v. District of Columbia Dept. of Corrections*, 86 F.3d 1180 (D.C. Cir. 1996) and *Johnson v. Lehman*, 679 F.2d 918 (D.C. Cir. 1982)). These cases hold that courts should "respect the employer's unfettered discretion to choose among qualified candidates[.]" absent evidence that the employer's alleged error in its selection process was "too obvious to be unintentional." *Fischbach*, 86 F.3d at 1183. In this case, the City maintains that any deviations from its SOPs were insignificant and, in any event,

would not have altered the outcome with regard to Sommer since Snell considered her unfit for either the Captain position or the Assistant Battalion Chief position. *Id.*, pp. 6-7. This may be, but once again the City is hanging its hat on its assertion that Sommer would not have been considered for either the Captain position or the Assistant Battalion Chief position because she did not meet the additional qualifications for the positions as set forth in the "Essential Knowledge, Skills and Abilities" section of the job descriptions contained in the SOPs.

The City's arguments might be valid, but only a jury can make that determination. If a jury agrees that Fire Department's deviations from its SOPs when filling the Captain position and Assistant Battalion Chief position were insignificant and not the result of any illegal motive, and if a jury believes and accepts Snell's testimony that he did not feel that Sommer was qualified for either of those positions anyway, then a jury can find in favor of the City and against Sommer on her claims. But the issues presented in this case cannot be resolved absent credibility determinations, which are the exclusive domain of a jury. The City has presented what appears to be compelling evidence that it made well reasoned and carefully considered decisions when it promoted Carey and Bemiller. On the other hand, the court is compelled to state that Sommer's evidence, at least on the record as it stands currently, appears much weaker. But at the summary judgment stage, the court must draw all reasonable inferences in favor of the non-moving party, and must endeavor *not* to weigh the evidence or make credibility determinations. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994).

Sommer has succeeded in explaining why she did not formally apply for the Captain's position or the Assistant Battalion Chief's position. She has raised fact issues concerning her qualifications versus those of the male firefighters who received the promotions. She has presented evidence that the Fire Department did not strictly follow its own standard procedures when filling the positions, and credibility determinations must be made to resolve whether Sommer would not have been selected over Carey or Bemiller based on the factors presented by Snell in his affidavit. For these reasons, the City is not entitled to summary judgment.

### CONCLUSION

For the reasons discussed above the motion for summary judgment filed by the defendant, City of Elkhart, is DENIED.

Date: December 23, 2009.

                                                    /s/   William C. Lee
                                                   William C. Lee, Judge
                                                   United States District Court
                                                   Northern District of Indiana